Just to clarify before the, is it Ms. Newman? Yes. Good morning. So you have 10 minutes and we'll hear from the state, then your co-counsel has five minutes for rebuttal and we have a hard division of time there. And then, because of the cross-appeal, the state will then have rebuttal limited to the cross-appeal issues, not a sort of rebuttal on the principal appeal. So with that, you may proceed. Thank you. Good morning, Your Honors. Brooke Newman from Pepperdine Law School, appearing on behalf of the appellant, Mr. Paulo. I would like to reserve five minutes of time as stated for my colleague's rebuttal. This case concerns Mr. Paulo's inability to exercise outdoors and to practice his religion. Despite clear Ninth Circuit precedent, prison officials have repeatedly violated these rights. Regarding Mr. Paulo's Eighth Amendment claim, the law of this circuit is that administrative exhaustion is measured from the date that an amended complaint is tendered to the district court. Under the Ninth Circuit's decision in Sadezay v. Davis, so long as a prisoner exhausts their administrative remedies before tendering an amended complaint to the district court, then they have properly exhausted. I think you're correctly characterizing what our cases say. Let me tell you what concerns me about that principle and see if you can respond to it. Not this case, so you don't have to tell me that this didn't happen here. Somebody files a lawsuit and they have done nothing to exhaust on a claim. And then they file an amended complaint, which repeats the very claim that they failed to exhaust on and adds another one on which they did exhaust. Is the time to exhaust the first claim start all over again? Under Sadezay, it would, Your Honor. Or do we, I mean, I understand that's what our cases say. It strikes me as sort of a strange rule. If it's exactly the same claim that you made in your original complaint and assuming you failed to exhaust that and you have no excuse for it, your time to exhaust gets reinstated? It's not strange under the Federal Rules of Civil Procedure because you are adding new facts for administrative exhaustion, which isn't affirmative. But they're really not here with respect to your Eighth Amendment claim. Your Eighth Amendment, in your case, your Eighth Amendment claim in your operative complaint is precisely the same one as in your original complaint. You've added a free exercise claim and nobody's fighting about whether that's exhausted here. We, oh, apologies, Your Honor. So I'm trying to figure, I think the case law says what you say it does. It just strikes me as a strange result that somebody can repeat exactly the same claim in the second complaint, add another one that he has exhausted, and get out of the exhaustion requirement as to the first one. We respectfully disagree that it is the exact same claim because he added an additional party and he also added additional facts to show he was denied outdoor exercise for a more continual period of time. So he added additional facts showing the deprivations continued for a longer period of time and that they actually worsened and that they involved more defendants. So while it has the same root of the Eighth Amendment claim, just like Satizai with the excessive force claim, he did add new facts. Let me ask you one other question about that. It was the grievance with respect to the additional claim here, the embellished claim, if you would, gets filed significantly after the time that the events were supposed to have happened. Could the prison officials have turned it down as untimely? My understanding is that he complied with the prison's grievance procedures in filing that second grievance. So my understanding is they could not have turned it down. Well, but I mean, had they, we'd have a different case. Your argument is not that, your argument is that he didn't, he doesn't have to exhaust because they didn't respond to it. Had they responded to it, we'd have to figure out whether or not their response was, meant that he had failed to exhaust. No, Your Honor. If I'm understanding your question correctly, had the prison timely responded to Paula's grievance, then he would have properly exhausted under the prison's administrative regulations. What if the prison's timely response was your grievance is too late? You filed it too late because the events you're grieving about occurred in the distant past. Then, then would he have exhausted? If the prison had a regulation to that effect, Yeah, I'm saying, yes, yes. So assuming that the prison regulation said you had to file within a certain time and he didn't, then the prison regulation would control in that instance. But I don't think we have that issue here, which apologies if I'm not answering your question correctly on that point.  But that's why we respectfully ask this court to look at the facts we alleged in our brief, which is that Mr. Apollo properly exhausted by August 3rd. He subsequently tendered an amended complaint to the district court on August 10th. And thus he properly exhausted under satisfy. At the very least, we do allege in our brief that Mr. Apollo was thwarted in his efforts to exhaust his administrative remedies. And we have three arguments to that effect, if the court is willing to hear those. First, under this court decision in Andres versus Marshall, failure to timely process a prisoner's grievance in prison constitutes exhaustion and even more so thwarting. And here the prison's own regulations, which we use to determine when a response was due, require a response by August 1st. However, prison officials belatedly responded on October 13th. Thus failing to timely process this grievance under Ninth Circuit precedent and thwarting his efforts. Additionally, Apollo alleged in his verified complaint that prison officials lost critical documents necessary for his administrative appeal, but then penalized him for failure to attach those documents. The district court incorrectly discredited Apollo's testimony on this point. Finding his contention was quote unlikely. Meanwhile, the defendants offered no countervailing evidence. They simply asserted Apollo did not follow the proper procedures and that conflicting issue of material fact should not have been resolved on summary judgment. So can I ask, supposing that we agree with you on exhaustion, if we were to remand on that basis, defendants will then immediately move for summary judgment on the basis of qualified immunity and they will say that taking the facts in the light most favorable to you or to the client, that he was deprived of outdoor exercise for a period of time, but he also had at least some degree of indoor exercise and recreation opportunities. And what is the case that clearly establishes that that is an Eighth Amendment violation? Yes, Your Honors, that case is Allen v. Sakai, in which this court reversed the district court's denial of summary judgment and held that an Eighth Amendment violation occurred and the prison officials were not entitled to qualified immunity specifically when they only allowed a prisoner 45 minutes of outdoor exercise over the course of six weeks. But since Allen, we've clarified in Norbert that deprivation of outdoor exercise is not per se unconstitutional. If you have, you can't look just at how much outdoor exercise time was there. You have to assess, was there indoor recreation opportunities? So don't we have to look, we can't stop just by saying there wasn't outdoor exercise. We have to look at the indoor part too, don't we? Under Norbert, we do, but Norbert could not have overturned long-standing Ninth Circuit precedent acknowledging the right to exercise outdoors. And so looking at this meaningful recreational opportunity under Norbert, we see on page 929 of that decision that the long-term denial of outdoor exercise is unconstitutional. Norbert quotes that. So it can't change that fundamental proposition. And the facts we have in Norbert are wildly different, your honors, because there's no dispute that the prisoners actually received three and a half hours of dedicated exercise time every week in a ventilated sky-lit rotunda equipped with gym equipment. In addition to that dedicated time, they also received four and a half to eight hours of out-of-cell time every single day, which allowed them to also use the time in the gym. That's wildly different than the facts we have here, your honors, because Paulo only received one to two and a half hours of out-of-cell time a day at any given time, depending on the prison's schedule. That included his time to use the restroom, attend chapel, meals, visitation, education, exercise, etc. And then for the longest period of time, he only received two concurrent hours of gym and yard time. And he actually really never received that time. And so in Norbert, it was not disputed that they actually received far more time. And in Paulo's case, he actually did not receive that time and it's disputed. So we would direct the court that that is the difference between Norbert and Norbert, and that relying on Norbert for the proposition that there's no right to outdoor exercise in the Ninth Circuit is incorrect because the court can't change an earlier proposition that there is. Norbert was a very limited factual scenario where the prisoners received equivalent to outdoor exercise opportunities in a very sophisticated prison setting that we don't have here. And I see my time is running low, so I will briefly address the free exercise and our LUPA claims here as well. Our position is that on Paulo's religious liberty claims, the defendants do not have a basis to challenge the district court's R-LUPA ruling. Specifically at page 5, at page 1018 through 1019 at 5ER, the defendant's notice of appeal is limited to qualified immunity. And the Supreme Court made very clear in Ashcroft versus Alkeid that qualified immunity shields state officials from money damages in their individual capacities. So you didn't brief the question of whether the cross-appeal was timely. Do you have a view on that? Have you taken a position on that? We did not brief that issue, Your Honor. I know that the court heard oral argument to that effect last month and that whether or not interlocutory appeal is a judgment for purposes of Rule 58 and Rule 54. This court has not decided that issue. The Fifth Circuit has decided that issue. And so if the court aligned with the Fifth Circuit, their appeal would be timely and we would not have a jurisdictional issue on that front. However, if the court disagreed that an interlocutory appeal was a judgment for those purposes, then there could potentially be a jurisdictional issue. And we're not the panel that's going to decide that other case. But what's your view? Very, very interesting questions, Your Honor. Because I did not brief it, I do not want to risk giving this court an extremely uneducated view. I apologize to evade the question. I never want to evade a question. It's jurisdictional, that's why. Or is it jurisdictional? It might be jurisdictional. But I take it you haven't taken a position on whether it is or isn't. Thank you, Your Honors. I apologize. No, it's fine. I see my time is running low, but as we've discussed, Paolo is not seeking monetary damages on his Arlupa claim. He is only seeking injunctive relief. And so the district court's Arlupa judgment must stand. There is no qualified immunity defense to that claim. The only issue... Well, you're actually a little bit over. You can wrap up very briefly. I apologize, Your Honors. The only remaining issue that my co-counsel will likely address on rebuttal is whether or not the defendants are entitled to qualified immunity on Paolo's free exercise claim because damages remain to be tried on that claim. And we reserve the rest of our time for rebuttal. Thank you. Thank you. Mr. Davis. Thank you, Your Honor. Thank you. I'd like to thank the court for the opportunity to address my arguments to the panel. While the district court properly granted defendants' motion for summary judgment with respect to Paolo's outdoor exercise claim, the district court erred when denying defendants' motion for summary judgment with respect to Paolo's First Amendment and Arlupa claims because Paolo was seeking a kosher diet which he admits does not comport with his religious beliefs. I will first address the religious diet claims and then I will address the outdoor exercise claims, if that's okay with Your Honor. Do you agree that whether or not the religious diet claims are appropriate in front of us will depend on the court's decision in another case? You mean with respect to timeliness? Yes. Yeah, it would definitely depend on that whether or not it was timely. The only timeliness we have is because there was no second document filed and therefore no judgment with no judgment under the plain language of the rule. And I want to stress that. That's the plain language of the rule which this court is required to follow under the Supreme Court precedent than it is timely. And we had two circuit court cases. Your quarrel will be with someone else. My quarrel was with Judge Rawlinson who I used to clerk for. So the McNeil panel is going to resolve that question. Or not. It is before McNeil, before that panel. And my question is, do you, the question of McNeil is the, as you are aware, when the time starts to run when there isn't a separate document. But my question is, is that time limit a jurisdictional requirement when it's a cross appeal? Or to put it another way, is the timely filing of a notice of cross appeal a jurisdictional requirement? Okay, because I, it's, well the thing is that there's an additional rule that gives you additional time for a cross appeal. No, no, no. I'm not asking about what the time limit is. McNeil will decide whether it's timely or not. My question is, the timeliness of an appeal in a civil case is jurisdictional. Section 2107 in Bowles v. Russell. Is the timeliness of a notice of cross appeal a jurisdictional requirement? You know, I haven't considered that argument, Your Honor, just to be honest. I, I, I, I, I, to be honest, Your Honor, I assumed that it was. Okay. When I was doing my briefing. And so that's why I didn't address that. So that's an interesting argument. And if Your Honor would like, I could, I could look into that for you and brief it. I don't think. Well, assuming we get to the merits. Okay. Of the religious claim. Right. Tell me why the district court erred. Well, because first, Chaplain Calderon is entitled to qualified immunity with respect to the First Amendment claim. Well, but the district court never got to, did the district court reject a qualified immunity? They didn't. See, and that's, you're asking, you're sort of asking us to, to, to do the district court's work on this one. Well, no, I'm asking you to do, to, to review this de novo like you're entitled to do because the district court didn't do what they were supposed to do. I mean, you're entitled. That's, that's, that's what happens when you ask us to do the district court's work. That's why, that's why it's up on appeal is because, because the district court didn't do. But that doesn't mean you, you're out of there.  Let me ask you a question in a less, in a less pejorative fashion. Okay. Shouldn't we ask, shouldn't we have the district court address qualified immunity in the first instance? No, Your Honor, because qualified immunity is the, is the right to be relieved from the burden of litigation. I think that you have an obligation to grant us qualified immunity. If the court, as a matter of law, we are entitled to it because we're giving it back to it. Then what it does, what you're doing is you're depriving us of the qualified immunity we're entitled to. Well, no, I mean, by, I mean, I, I, I took the point of the question to be not that we would send it back for trial, but that we'd send it back for the district court to assess qualified immunity and that that doesn't deprive you of qualified immunity. No, no, no. I respectfully disagree, Your Honor. Qualified immunity is to be relieved from the burdens of litigation. All litigation. That's why you can assert qualified immunity at the motion to dismiss stage. That's why you don't have to go through discovery when you're asserting qualified immunity at the motion to dismiss stage because it's the, the Supreme Court is clear that you have, it's the, it's to be relieved from all burdens of litigation. Is there a, is there a Supreme Court case that says that, you know, when a case is up on appeal on an issue other than qualified immunity and the district court hasn't yet ruled on qualified immunity, that the court of appeals must consider it in the first instance rather than leaving it for remand? I don't know if they've addressed that issue specifically. I don't think they have either. But they have addressed it. They have specifically addressed it saying that we're entitled to be relieved from burdens of all litigation, not just part of the litigation. We're not just going backwards. And I think that that's, that's a, that's a thing that we need to do with, with these qualified immunity cases because it is, it is immunity. And so we shouldn't be pushing it off and say, well, just because we're going to have to make you go back to the district court, because this is a de novo review. If it wasn't a de novo review and there weren't fact-finding issues, there were fact-finding issues involved, I would say yeah. Okay? For example, if you, if you say, you know, going back to trial. But the thing is, it's a de novo review. You're doing the exact same review that the district court's supposed to do. And so if you're not doing, not taking that obligation seriously, that we're entitled to be free from these litigations, I think would be a mistake, Your Honor. Assuming for a moment that we don't want to take up qualified immunity, can you address why the district court erred in granting, in not granting summary judgment? In other words, that, should, should we, assuming this whole host is in front of us and we say we're not going to take up qualified immunity, tell, tell me why the district court erred in its role. So are you, because qualified immunity has the two obligations, so you No, I'm, no, no, I'm stopping, stop. Assume for a moment we're not going to take up qualified immunity. Okay. But, but, so what, what I'm asking, Your Honor, then, is that you're saying that whether or not we are violating clearly set, we're violating the law? No, no, no, I'm asking you, the district court granted summary, declined to grant summary judgment here, right? No, they granted summary judgment. Granted summary judgment, I'm sorry. Granted summary judgment. And so the question is, assuming you're not entitled to qualified immunity or that we're not going to take it up, one of the two. Okay. I know you think that'd be a terrible thing. Why did the district court err in granting summary judgment? And don't tell me because it should have granted qualified immunity. Okay. Let me, let me try to clarify, okay? Because what I, what I think Your Honor is asking is whether or not that we violated the, violated the First Amendment. Is that the question, Your Honor, is asking whether or not the district court err in determining that we violated the First Amendment? And you're saying on the facts of this case, no reasonable finder of fact could find. Right. Putting aside whether the law is clearly established or not, you're saying on the facts of this case, no reasonable finder of fact could find a First Amendment violation. Correct, Your Honor. Right. Which I'd like to point out, though, is the first step in qualified immunity. Well, no, it's actually not. Because for, the first step in qualified immunity is whether or not there's a constitutional violation. The first step in, in summary judgment is whether the facts would allow somebody to find it. Okay. And so I'm trying to figure out why, in this case, the facts would not allow a court to find it. Let me go through, there's three points here. First, under the NEC regulations, Chapman Calderon lacked the authority to grant him the, the religious diet he wanted because his sincere beliefs do not allow, it's not requesting a diet that conforms to his sincere beliefs. Second, Paul failed to... Isn't that a fact question? Whether or not the diet corresponds to his sincere beliefs. No, we're not saying, we're, that, it's not a fact question because he admits it. He admits it doesn't correspond to his, his religious beliefs. He says, repeatedly, he says, this does not correspond, this is, my, my religious beliefs requires me to have fresh fruits and vegetables and fish. The, the, the diet he was seeking is a kosher diet, which has lots of meat on it. Kosher, kosher diets have lots of meat on it. They have all kinds of things that are on it. He's not requesting a diet that meets with his religious beliefs. He's saying that I, I want this diet because I think it best suits my religious beliefs. So that's not a fact question. He is not asking for a diet that comports to his religious beliefs. He's asking for a diet that does not comport. And so what we're saying is, is what he has to show is, is that he has a diet, okay? Under, under this court's decisions, he has to show that the, the diet we were providing him, which is an alternative meatless diet, without the foods that he considers to offend his beliefs, does not meet his dietary, will not sustain him in good health, while, and additionally, he has to show that the, the kosher diet, without the foods that offend his beliefs, would sustain him in good health. That's his burden that he has to prove. He has not met that burden. He has no evidence to, to, to meet any of that. And therefore, his claim fails on that ground, too, because he can't show a substantial burden to his religious beliefs. Third, Paul failed to meet his burden of showing that NDOC lacked a legitimate penological reason for declining to provide Paul with a diet that did not meet his religious beliefs, as required by Turner. So those are the three points that I have to do with this. Can you go back to his actual exercise claims as opposed to his free exercise claims? And, and tell me, there's, I think we all agree, I don't know if we all agree, I think we should agree, that Ninth Circuit law says you measure exhaustion at the, at the time that the operative complaint is filed. And the district court didn't do that. It measured exhaustion at the time of the original complaint. Why isn't that sufficient for us to send it back? Well, first two reasons is, one, and I don't know if I'm going to anger Your Honor, but the first, my first response would be, is because he's entitled to qualified, because we're entitled to qualified immunity. You did make me angry, but, but don't spend more time on it. And, and then I would refer Your Honors to the, to this court's decision that says, when you're affirming rather than reversing, okay, you're required, you're, in that case, there is a case that says you are mandated to affirm for any grounds that are in the record, regardless of whether or not, and you're not supposed to send it back. So if you're going to insist on talking about qualified immunity, I guess I'll ask you some qualified immunity questions. So, what about Allen? I mean, the allegation here is that, I think there was a six-week period in which he got, you know, no outdoor exercise time at all. Allen is also a six-week period, and I think he had 45 minutes there. It, it, it seems pretty, pretty close to the facts of Allen. Why doesn't that clearly establish... No, because, because of what Your Honor pointed out in Norbert. Norbert distinguishes all these cases. And I think that's an important thing to look at, is that Norbert says, hey, you know, these cases didn't say you have an obligation. In fact, it says specifically that there is no constitutional right to outdoor exercise in Norbert. Well, there's no per se... Norbert says that deprivation of outdoor exercise is not a per se constitutional violation, if you have alternative... Feeding for recreation. ...indoor recreation. But what, taking the light, taking the facts in light most favorable to the plaintiff, what is there in the record here that would suggest that he had that sort of adequate indoor alternative? Well, Allen, sorry, I... Well, no, so the question is, what can you point me to that shows that he had the sort of indoor alternatives that Norbert says are okay? The record is replete with it. I mean, when he was responding to his grievances, if you look at those responses, it talks about how many hours he's given on tier, how many hours he's given, how many hours he's given, which is what the court in Norbert pointed out. He said, hey, in the Fifth Circuit case, the Fifth Circuit found that, hey, having one hour a day on tier was sufficient. And he had more than one hour a day on tier. He had more... In fact, he had more... He had recreational opportunities with safe... All pointed out that he had visitation rights. This is not the case where these cases he's...they start relying on. These cases are relying on where the prisoner is in lockdown, 24 hours a day in his cell, and therefore he needs to have outdoor exercise. He has no outdoor... recreational opportunities. But when this court in Norbert says... If I understood opposing counsel's argument, the on-tier time included all their time to engage in a variety of life activities, not... It wasn't just exercise time. Right. You're right. So what was... And were there facilities for exercise, indoor exercise, that are meaningfully comparable to outdoor? And how much of that time would have to be spent on eating, using the restroom, whatever it may be, other activities, religious exercise? There's gym time. There's time for visitation. There's time to go to meals. There's time that he doesn't count when he's walking back and forth outdoors to go to the... to go to the yard. It's replete that he has clearly established, I mean, in the record, that he has more than enough time. I know they pointed out one time in the reply brief they said, well, he was in lockdown. Well, if you look at that quote that they talk about where he says that he was in lockdown, it says, I'm currently in lockdown. He doesn't say how long he was in lockdown. He doesn't say that he was in lockdown for six weeks. There is no evidence in the record that he was ever in lockdown for that time and period of time, which would say that he had no outdoor exercise. So you don't have to, but if you want to reserve time for rebuttal on the cross-appeal, you may, or you can keep going now. Thank you, Your Honor. I will reserve time. Ms. Enloe. Good morning, Your Honors. Madeline Enloe from Pepperdine Law, representing the appellate Mr. Paolo. I'd like to begin by addressing the merits of the free exercise claim. The district court correctly ruled that the defendants violated Mr. Paolo's free exercise rights. The First Amendment prohibits any substantial burden on a prisoner's exercise of religion unless that burden is reasonably related to legitimate penological interests. The defendants failed to meet this burden at the summary judgment stage. But the district court never addressed qualified immunity. No, Your Honor, but we believe that the defendants are not entitled to qualified immunity. You may make a compelling case about that, and the other side may have one, too. But isn't the district court supposed to do that when the other party asserts it as a defense? Your Honor, at the most, this court could send it down to discuss the qualified immunity issue, but as for the merits, we do believe that they presented no evidence sufficient to overturn summary judgment in their favor at this time. Well, I wanted you to address separately the factual issue about summary judgment. I'm just concerned. The Supreme Court said any number of times, don't just run right to the constitutional violation of this. Figure out whether there's qualified immunity. And they say there is, you say there isn't, because you're not seeking damages, etc. Doesn't the district court at least have the obligation to treat that argument? Your Honor, I'm not sure about the obligation with that, but this court could address it as well and agree with us to find that he did not. You all want us to do extra work, aren't you? Yes, Your Honor. But regardless, as you mentioned, we do believe that the defendants are not entitled to qualified immunity on this issue, because Mr. Paolo cited numerous cases that put the prison officials on notice of their unconstitutional conduct, including this court's decision in Chakur versus Shariro, which is very similar to the case here. And in that case, the court held that denying a prisoner his requested diet was in violation of his sincerely held religious beliefs and violated the free exercise clause, even though that plaintiff himself was not required to eat that diet as his religion, but believed it necessary for his own personal practice. Is there a fact question about whether or not this diet is required by his sincerely held religious beliefs? Your friend says at least there's evidence in the record that he's just looking for food that he likes better than what he would be served otherwise. No, Your Honor. We do not believe there's dispute in that. Mr. Paolo stated that he sincerely believed the common fair diet was the best way for him to practice his religion, and it was necessary for his religious exercise. I understand it doesn't have to be an established religion, but it does seem like that his religion in this case is essentially I would like to eat this stuff. Is there some other evidence that he sincerely holds a belief that this is a religiously required exercise? Excuse me. Sorry, Your Honor. Yes. But there is evidence to that. Mr. Paolo stated that he needed to consume a nature-based diet consisting of nuts, grains, vegetables, and fish to practice Buddhism, and in 4ER 535, Mr. Paolo stated that all of those are contained in the common fair diet, and that was the best diet for him to practice his religious exercise. While the record does not provide precise details as to the alternative meatless diet, which was what he was automatically provided and was requesting the common fair diet in replacement of, we can presume that an alternative meatless diet would not include fish, which he believed he needed to best practice his religious exercise. And while Buddhism does not require its adherents to have that specific diet, the prison's own policy does require that Buddhists have this alternative meatless diet and supplement their own views in place of Mr. Paolo's beliefs for what he needed to practice his own religious beliefs. So we do not believe it is a mere preference, Your Honor. We believe this was necessary for his religious exercise. For Paolo, he has stated that the diet is a spiritual act, and the prison's outright denial of the common fair diet forced Mr. Paolo to completely abandon the diet aspect of his religion and prevented him from exercising this central tenet. And on that, the defendants have not, excuse me, Your Honor, the defendants have not pointed to any evidence contrary to overturn's summary judgment, and we do, again, we do not believe they are entitled to qualified immunity. And, Your Honor, circling back to the exhaustion issue, Sadezay made clear that litigants do not need to file a new federal case simply because they had not exhausted at the time in which they filed their original federal complaint. The time of exhaustion can be continued from the amended complaint and that is the date to look at. And the District Court committed error by looking not at the date of the amended complaint, but at the date of the operative complaint. Your Honor, if you have any more questions, I see my time is running low. It appears not. Thank you, Your Honor. We respectfully ask that this Court reverse the District Court's judgment on the Eighth Amendment claim and affirm the District Court's judgment on the First Amendment claim. Thank you. Thank you, Counsel. Mr. Davis, rebuttal on the cross-appeal. I'll be, frankly, real brief. First of all, I'd like to talk about Sadozay because that was brought up before, and I would respectfully disagree that Sadozay says that it doesn't apply just to new claims. If you look at the facts of Sadozay, then you'll see that they only applied it to a new claim and not to an old claim, although the language appears to be more expansive than actually the facts of the case. But I think Your Honor should take a cue from Norbert. Norbert looked at exercise claims and said, hey, you know, if you actually look at the facts of these cases, it's not holding exactly what people are claiming they hold about an absolute right to outdoor exercise. And I think Your Honor should take that obligation, I mean, that opportunity to do the same. Second of all, I'd like to point out one point about amending because I did make a point about that you can't that the amended complaint cannot be exhausted because it was improperly granted. The counsel on the other side in the reply brief brought up and said hey, he could amend as a matter of right, and therefore the district court couldn't have denied the motion to amend. Well, that's not true, Your Honor, because he wasn't bringing an amended complaint. He was actually bringing a supplemental complaint under Rule 15d because he was adding facts that happened after the original complaint. And under Rule 15d you cannot amend as a matter of right. The only way, according to this court's precedent, the only way you can amend under 15d is by getting a motion to amend, and because the district court erred in denying the motion to amend, they can't rely on the amended complaint to establish exhaustion. All the other claims are in my, all the other arguments are in my briefs. I refer to them and respectfully request that you grant judgment in favor of defendants on all claims. This is one where your position is the district court erred in granting the motion to amend, right? Yes? Granting the motion to amend. You said denying, that's what I meant. Oh, granting the motion to amend. Sorry, Your Honor. Thank you, counsel. Thank you. We thank all counsel for their arguments, and Ms. Newman and Ms. Enloe, you were representing Mr. Paolo Pro Bono, and the court thanks you for your service. The case is submitted.
judges: HURWITZ, MILLER, SUNG